OPINION OF THE COURT
Jerome C. Gorski, J.
This case comes on to be heard by way of an order to show *1041 cause by the defendant, New York State Low-Level Radioactive Waste Siting Commission, seeking this court to grant an injunction against the plaintiffs enjoining said parties from interfering with petitioner’s testing of certain lands upon which a proposed low-level radioactive waste dump site may be located.
The plaintiffs are all owners of real property in Allegany County in the areas in which the State has selected as possible sites for its proposed low-level radioactive waste dump. The defendant is an agency of the government of the State of New York created by ECL 29-0301, for the purposes of selecting a site or sites within the State of New York for the disposal of low-level radioactive waste generated within the State. The operations of the defendant are governed by ECL article 29.
ECL article 29 was enacted by the New York Legislature pursuant to the mandate of 42 USC § 2021b et seq., the Low-Level Radioactive Waste Policy Amendments Act of 1985. That Federal statute established a policy which requires each State to be responsible for all low-level radioactive waste generated within its borders by means of an in-State disposal site, or entering into a compact with other States for such disposal. To comply with that statute, the Legislature created the defendant Commission to select a dump site within the State of New York and to select a disposal method for the waste. The actual acquisition and development of the selected site will then be the responsibility of the New York State Energy Research and Development Authority.
The instant dispute between the parties arose in September 1989, when the defendant Siting Commission published a report identifying that three of the five potential sites for a low-level radioactive waste dump are within Allegany County, more specifically, on the private property owned by the plaintiffs. Pursuant to that report, the defendant, Siting Commission, intends to conduct "precharacterization studies” of each of the potential sites situated within Allegany County. The Commission will utilize precharacterization study data to identify at least two sites to be studied for a 12-month period in more detail.
The activities involved in the precharacterization studies consist of the following: seismic refraction studies done by thumping the ground with a sledge hammer or like apparatus; excavating of test pits; installing wells into both the upper *1042 and lower aquifers; and test borings deep into the ground with the insertion of casings and possibly grout. The plaintiffs claim that these activities will result in the felling of hundreds of trees, damage to many others, deep ruts on existing paths and the creation of new inroads, substantial soil erosion and the intermixing of groundwaters. The defendants represent that although there will be damage done to the subject properties, care will be taken to minimize the harm to same and, the State, by statute, will be liable to the landowners for actual damages that occur during the precharacterization process.
In order to effectuate the study of the proposed sites, the defendant Siting Commission has attempted to gain permission of the landowners to enter the subject properties. To date, plaintiffs who comprise most of the landowners have not granted such access voluntarily and have, at various points, blocked access to their property.
ISSUES
Based on the contentions of the parties, the following issues are presented to this court for determination.
(1) Does the State have the statutory power to enter the subject land?
(2) Are the proposed tests of a kind anticipated by the statute?
(3) Would irreparable harm come to the defendant by the denial of this motion?
(4) Which party is favored by a balancing of the equities involved in this matter?
(5) Has the defendant shown a likelihood that it would succeed on the merits of the underlying action (requesting permanent injunction)?
(6) Is a preliminary injunction the proper remedy in this matter?
(7) Do the activities allowed by ECL 29-0305 rise to the level of a "taking”?
(8) If so, is just compensation provided for?
(9) Is ECL 29-0305 constitutional?
It is important to note at this time that nothing contained in this decision purports to preempt the ultimate decision as to the appropriateness of the Siting Commission’s eventual site selection.
*1043 1. STATUTORY POWERS OF ENTRY ON TO THE LAND
It is not disputed that ECL 29-0305 is applicable to the case at bar. That statute provides that the defendant Siting Commission "may, after proper notification and identification, enter at reasonable times upon such lands, waters or premises as in the judgment of the commission may be necessary, convenient, or desirable for the purpose of making surveys, soundings, borings, and examinations to accomplish any purpose authorized by this title, the commission being liable for actual damages done.” (ECL 29-0305 [3].) This statute alone clearly establishes the right of the defendant Commission to enter onto the land which is the subject of the instant action. The activities that the defendant Siting Commission may conduct are more fully discussed below.
2. defendant’s statutory power to conduct the PROPOSED TESTS
The State of New York, in order to determine the relative suitability of the five potential nuclear waste disposal sites, seeks to do the following tests: seismic refraction studies, excavation of test pits, installing several pairs of test wells and test borings deep into the ground. The testing that is to be done and the location of the particular test sites are mapped clearly on site maps provided to the court. The legislative history reflects the Legislature’s concern that the protection of public health and safety and safe environment, as well as "avoidance or mitigation of harm from the unanticipated release of low-level radioactive waste or contaminated materials”. (ECL 29-0303 [4] [c].) Thus, it can be reasonably inferred that the Commission would be granted the authority necessary to meet its mandate and protect the safety of the public. None of the affidavits submitted by the plaintiffs dispute the usefulness of the proposed tests in the protection of the public health and prevention of contamination of the area with radioactive waste in the event that this area is chosen as the eventual dump site.
The language of the statute indicates the willingness and intent of the Legislature to allow both above and below the ground activities and tests, intrusive in nature, in order to accomplish the necessary studies that will enable the defendant Siting Commission to come to a well-informed decision regarding the eventual site of this State’s radioactive waste dump. The proposed tests, as outlined by the plaintiffs’ papers *1044 and the defendant’s papers, are within the statutory powers of the Commission to conduct and are consistent with both the letter and the spirit of the law.
Based on the above, it is unnecessary for this court to determine at this time whether the defendant Siting Commission is the agent of the New York State Energy Resource and Development Authority triggering EDPL 404 which, arguably, allows a wider range of testing than ECL 29-0305. It would appear, however, that such an agency relationship exists based on Public Authorities Law § 1854-a (3) (b)-(d).
3. IRREPARABLE HARM
One of the requirements for the granting of a preliminary injunction is a showing, by the party seeking relief, that it will suffer irreparable harm if the relief is not given. The defendant Siting Commission contends that failure of this court to grant a preliminary injunction will result in extensive delay to the Commission’s entry on to the plaintiffs’ land as entry will not then be possible until the court decides the underlying matter. As authority for their position, the defendant calls the court’s attention to 42 USC § 2021e (d) (2) (C), in which Congress has required that each State assume responsibility for its own waste by January 1, 1993. It states further that after January 1, 1996, New York will not be permitted to dispose of its waste in any other State and will be required to take possession of all waste generated in the State and be liable to waste generators for possible damages. Between January 1, 1993 and January 1, 1996, the State of New York must provide for the storage, disposal or management of low-level radioactive waste generated within the State. During that period of time, no other State will be required, as is currently the case, to accept any other State’s low-level radioactive waste.
As further authority for their point, the defendant cites the legislative history which emphasizes expedited completion of the selection process. "The legislature finds immediate implementation of steps toward establishing by January [1, 1993,] low-level radioactive waste management facilities * * * necessary to provide for continued operation of essential and beneficial medical, research, industrial, energy, and other facilities in New York which use radioactive materials and generate low-level radioactive waste and to protect the public health and safety and promote the general welfare of the people of *1045 the State of New York.” (L 1986, ch 673, § 2.) The Legislature further found that in these circumstances, "the need to expedite the completion of these facilities and to minimize or eliminate any delay in beginning facility operation warrant the prescription of special provisions for the timely review and development of such facilities in a manner consistent with public participation and decision making, the protection of public health and safety of the state’s environment, and the promotion of the general welfare. ” (L 1986, ch 673, § 2; emphasis added.)
The Legislature also established a procedure for expedited judicial review to be "determined * * * as expeditiously as possible and with precedence over all other matters except special proceedings under the election law.” (ECL 29-0505 [2] [c].)
The plaintiffs, conversely, have claimed that the defendant has not proven that irreparable harm will come to them by the denial of this motion for a preliminary injunction. As authority for that position, they attach the "Best Estimate Schedule of Primary Points in LLRW Facility Development.” This document does indicate that the target date for opening the facility is "95-96.” Because of this target date which is at least five years away, the plaintiffs argue that time is not of the essence.
This court takes recognition of the fact that the Legislature has made the establishment of this low-level radioactive waste dump site a high priority. Further, study of this schedule of events indicates that if one or more of the events listed is delayed, it could affect the rest of the schedule in an adverse way. As is evident from this schedule, it does not appear to allow for the extra time that it would take in order to subject this and other matters to extended judicial review. The harm in not using all due speed in completing this project is clearly defined by this statute and provides for greatly increased disposal costs following January 1, 1993 and the undertaking of tremendous liability by the State of New York if the facility is not completed and operational by January 1, 1996. Further, failure to meet Federally imposed deadlines could result in the inability of waste generators in the State of New York to safely dispose of their radioactive waste.
Merely because the deadline for completion of the entire project is five years in the future does not negate the premise that a delay would be irreparable. Because of the importance *1046 of this project to the people of the State of New York and the dire consequences for failure to comply with the mandates of the Federal law, delay at this point in time of the proposed precharacterization studies would cause irreparable harm to the State of New York.
It should be noted that the court is constrained by the legislative history of this matter and the Federal mandates.
4. THE BALANCING OF THE EQUITIES
Understandably, the plaintiffs are seeking to preserve the integrity of their land which is their private property. They are also seeking to preserve the environment in and about the area and to avoid damage to the natural landscape of the lands which could also affect the wildlife of the area.
The defendant, however, was created to enable the State of New York to comply with a Federal mandate requiring that each State have the ability to dispose of its locally generated low-level radioactive waste. The State has the responsibility for (and liability to) the residents of the State of New York to build a disposal facility in the State of New York in a timely and safe manner and at an appropriate disposal site. The monetary consequences of not having such a facility are clearly expressed in the Federal statute. Further, the consequences of not testing the possible disposal sites properly prior to the building and operation of a low-level radioactive waste disposal facility will include adverse effects to the public health and welfare. The proposed tests are for the purpose of complying with the Federal and State laws, and protecting the public health and welfare of the citizens of this State.
In conclusion, although the court is extremely sympathetic to the concerns of plaintiffs, the balance of the equities involved in this dispute weigh in favor of defendant.
5. LIKELIHOOD OF SUCCESS ON THE MERITS
Based on numbers "1” through "4” above, notwithstanding the constitutional question which shall be discussed below, the defendant Siting Commission has shown the likelihood that it would succeed on the merits of the underlying action.
6. PROPER REMEDY
Based on numbers "1” through "5” above, a preliminary injunction is the proper remedy in this matter, notwithstanding the constitutional question which will be discussed below.
*1047 7. TAKING
A major contention of the plaintiffs is that ECL 29-0305 is unconstitutional as it amounts to a taking without just compensation. The plaintiffs claim that ECL 29-0305 is violative of both the United States Constitution and the New York State Constitution. As authority for their position, the plaintiffs cite the unreported case of Rochester Gas & Elec. Corp. v New York State Envtl. Facilities Corp. (Coming, J.). That court could not decide whether the proposed testing rose to the level of a taking because of the many factual questions regarding the degree of testing to be done. Plaintiffs also cite numerous out-of-State cases which interpret statutes peculiar to those States.
The defendant, conversely, contends that ECL 29-0305 is constitutional as it seeks entry to the land for testing purposes only. The defendant cites as authority King v Power Auth. (44 AD2d 74 [3d Dept 1974], affd 38 NY2d 756 [1975]). In that case, the defendant sought to enter plaintiff’s lands for purposes of determining whether such lands would be an appropriate site for a new major electrical generating facility. In King, the defendant’s authority was Public Authorities Law § 1007 (8) which stated, "The authority and its duly authorized agents and employees may enter upon any real property for the purpose of making the surveys or maps mentioned in this section, or for such other surveys or examinations of real property as may be necessary or convenient for the purposes of this title.” (Emphasis added.)
Pursuant to that law, the court upheld the defendant’s rights to enter the private property and conduct "digging * * * [and] blasting” and allowed storage of the defendant’s equipment on the site. (Supra, at 75.) The Third Department recognized the necessity for entering on to private property for the purposes of "making surveys and examinations” prior to construction of public improvements and recognized same as constitutional to the extent that the entry is temporary, and damage is incidental or preliminary. (King v Power Auth., supra, at 76.) Also, the court added that " ' "No constitutional principle is violated by a statute which allows private property to be entered upon and temporarily occupied for purposes of surveys and other incipient proceedings with a view of judging and determining whether the public needs require appropriation or not, and if so what the proper location shall be” ’ ”. (Supra, at 76.) The Court of Appeals affirmed the *1048 Third Department decision which determined that blasting, digging and the cutting of trees and vegetation were allowable activities within the meaning of the above statute.
ECL 29-0305, as compared to Public Authorities Law § 1007, allows a greater range of activities, to wit: surveys, soundings, borings and examinations; and yet the activities outlined by the papers before the court appear to be less intrusive and less destructive than the blasting and other activities allowed in King (supra).
For the above reasons, this court concludes that in the instant action, the proposed activities of the defendant as presently outlined are not a "taking” violative of constitutional principals. As conceded by the Assistant Attorney-General during argument, the defendant’s authority is not unlimited and more intrusive and substantial entry, not presently contemplated, may permit plaintiffs to seek a remedy.
8. JUST COMPENSATION
Although the court has determined that the defendant’s proposed activities do not rise to the level of a taking, it is important to note that ECL 29-0305 (3) provides that "commission being liable for actual damage done.” King (supra) clearly states that even where a statute does not specifically provide for compensation caused by entry for testing, if the Authority has the capability of suing and being sued, it can be legally deduced that there is an available remedy to the landowner for actual damages.
In the case at bar, there is a specific provision for the defendant to be liable to the landowners for actual damages done. The principal emphasis of the affidavits submitted by plaintiffs is that monetary damage will be suffered by plaintiffs. Just compensation is expressly required and provided for by the statute for the damage done by the entry on to plaintiffs’ land for testing.
9. CONSTITUTIONALITY
For the reasons above, ECL 29-0305 is constitutional.
Therefore, it is the decision of this court that the defendant’s motion for a preliminary injunction relative to the proposed activity necessary for the reasonable testing of the subject property for purposes of assessing the suitability of that property for a possible low-level radioactive waste dis *1049 posai site is hereby granted and the plaintiffs’ request that the court declare the defendant’s proposed action as being an unconstitutional taking is hereby denied.
The court is well aware of the sensitive nature of this matter. In anticipation of an appeal of this court’s ruling and to eliminate any damage to plaintiffs’ property should it be deemed that this court misinterpreted precedent in this area of law, the court will grant a stay of its ruling should plaintiffs file an appeal. In keeping with the spirit of the interpreted legislation, it is respectfully suggested that the Appellate Division expedite an appeal should one be taken. Under these circumstances, the stay will not unduly delay the testing contemplated by the defendant.